# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

CASE NO. 3:23-cv-566

| | |
|---|---|
| SPINOSO REAL ESTATE GROUP, DLS, LLC, solely in the capacity as court appointed receiver pursuant to that certain Consent Judgment and Stipulated Order for Appointment of Receiver entered on May 21, 2021 in the General Court of Justice, Superior Court Division County of Mecklenburg, State of North Carolina, successor-in-interest to TM Northlake Mall, LP,<br><br>Plaintiff,<br><br>v.<br><br>AE OUTFITTERS RETAIL CO., and AMERICAN EAGLE OUTFITTERS, INC.,<br><br>Defendants. | **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |

Defendants, AE Outfitters Retail Co. ("AEO Retail") and American Eagle Outfitters, Inc. ("AEO Inc."), file this Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Complaint filed on July 25, 2023.

## ANSWER

1. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

2. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

3. Denied. AEO Retail is a Delaware corporation with its principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203-2382.

4. Denied. AEO Inc. is a Delaware corporation with its principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203-2382.

5. This paragraph contains legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual, it is denied that "[j]urisdiction lies with the North Carolina General Court of Justice, Superior Court Division" and admitted that the amount in controversy exceeds $25,000. By way of further response, Defendants specifically deny that Plaintiff is entitled to recover any damages.

6. This paragraph contains legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent this allegation is deemed factual, it is denied.

7. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

8. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

9.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

10. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore deny them.

11. Admitted that AEO Retail is a "premier national retailer." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and therefore deny them.

12. Admitted that AEO Retail signed a Lease dated March 31, 2003. The terms of that contract speak for themselves, so no response is required to Plaintiff's allegations about the effects of the contract. To the extent a response is required, the allegations are denied.

13. Admitted that AEO Inc. signed a Guaranty dated February 27, 2003. The terms of that contract speak for themselves, so no response is required to Plaintiff's allegations about the effects of the contract. To the extent a response is required, the allegations are denied.

14. The contents of the Guaranty speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

15. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

16. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

17. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

18. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

19. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

20. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

21. The contents of the Lease speak for themselves, so no response is required. To the extent that a response is required, the allegations are denied.

22. Denied as stated. By way of further response, AEO Retail suspended daily operation of a retail store in the leased premises on or around April 29, 2023 due to rampant violence at Northlake Mall that jeopardized the safety of AEO Retail employees and customers. This violence included multiple shootings and attempted murders, causing Defendants to lose customers and sales. These events excused Defendants' obligations under the Lease and the Guaranty.

23. AEO Retail admits that it received a letter dated May 10, 2023 regarding a "Notice of Default." The terms of that letter speak for themselves, so no response is required to Plaintiff's allegations about the contents of the letter. To the

4

extent a response is required, the allegations are denied. The remaining allegations of this paragraph are also denied.

24. Denied as stated. By way of further response, AEO Retail suspended daily operation of a retail store in the leased premises around April 29, 2023 due to rampant violence at Northlake Mall that jeopardized the safety of AEO Retail employees and customers. This violence included multiple shootings and attempted murders, causing Defendants to lose customers and sales. These events excused Defendants' obligations under the Lease and the Guaranty.

25. Paragraph 25 is an incorporation paragraph to which no response is required. To the extent that a response is required, denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Paragraph 31 is an incorporation paragraph to which no response is required. To the extent that a response is required, the allegations are denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Defendants acted in good faith at all times relevant to the Complaint.

## THIRD DEFENSE

Plaintiff failed to mitigate its purported damages.

## FOURTH DEFENSE

Plaintiff's claims are barred because material terms of the Lease and Guaranty are unconscionable.

## FIFTH DEFENSE

Plaintiff's claims are barred as a result of its own breach of the Lease.

## SIXTH DEFENSE

Plaintiff's claims are barred because it was, and continues to be, unjustly enriched at the Defendants' expense. In particular, among other examples, Plaintiff has received and continues to receive Lease payments from AEO Retail while furnishing Defendants with a shopping center that is less than what was promised in the Lease.

## SEVENTH DEFENSE

Plaintiff's claims are barred by the doctrine of frustration of purpose. Intervening, unforeseeable events that occurred after the parties signed the Lease (shootings, other crime, and Plaintiff's implementation of a policy forbidding teens

from shopping at the mall unattended) materially diminished Defendants' expected value in signing the Lease and Guaranty.

## EIGHTH DEFENSE

Plaintiff's claims fail because the Lease is ambiguous. As two examples, among others, the terms "continuously use and occupy" and "open for business" in Sections 7.01 and 7.02 are ambiguous.

## NINTH DEFENSE

Plaintiff's claims fail because they are contrary to public policy.

## TENTH DEFENSE

Plaintiff's claims under the Guaranty fail because there are no underlying obligations due to Plaintiff's breach.

## ELEVENTH DEFENSE

Plaintiff's claims fail due to deficient service of process. To date, AEO Retail has not been served with the Exhibits to the Complaint. AEO Inc. has not been served with anything at all: not the Summons, Complaint, or Exhibits.

## TWELFTH DEFENSE

Plaintiff's claims fail or are otherwise limited because Section 7.02 of the Lease permits AEO Retail to leave the store unattended "due to emergency events beyond Tenant's anticipation and control." The rampant violence at Northlake Mall and Spinoso's institution of a policy forbidding teens from shopping at the mall unattended constitute such emergency events.

7

**WHEREFORE,** having fully answered Plaintiff's Complaint, Defendants demand a jury trial of all issues so triable, and in the alternative, pray that the claims against Defendants be dismissed for failure to state a claim, and for such other relief and further relief as this Court deems just and proper.

## AE OUTFITTERS RETAIL CO. AND AMERICAN EAGLE OUTFITTERS, INC.'S COUNTERCLAIMS

AE Outfitters Retail Co. ("AEO Retail") and American Eagle Outfitters, Inc. ("AEO Inc.") (collectively, "Counterclaimants") allege the following counterclaims against Spinoso Real Estate Group, DLS, LLC ("Spinoso").

### NATURE OF THE ACTION

1. Spinoso (as successor-in-interest to TM Northlake Mall, L.P. ("Landlord")) promised Counterclaimants that it would lease them space in a shopping center that Spinoso would operate and maintain "in accordance with the standards of first-class shopping centers." Instead, Spinoso allowed the shopping center—Northlake Mall—to deteriorate into an atmosphere reminiscent of a warzone, replete with violent criminals, multiple shootings, terrorized tenants and customers, and diminished business. This caused Northlake Mall retailers to abruptly close their doors to protect their employees, customers, and reputations, and to attempt to mitigate their losses. For instance, after at least three shootings at Northlake Mall, Apple permanently closed its Northlake Mall location on March 1, 2023 and announced plans to move to Birkdale Village, a safer mall less than ten miles away.

## PARTIES

2. AEO Retail is a Delaware corporation with its principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203-2382.

3. AEO Inc. is a Delaware corporation with its principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203-2382.

4. Spinoso is a New York limited liability company with its registered address at 112 Northern Concourse, N Syracuse, New York 13212. Its members all reside in Onondaga County, New York.

## FACTUAL ALLEGATIONS

5. AEO Inc. is a leading global specialty retailer offering high-quality, on-trend clothing, accessories, and personal care products at affordable prices.

6. AEO Retail is an affiliate of AEO Inc. that entered into a lease with Spinoso's predecessor dated March 31, 2003 (the "Lease") for approximately 7,000 square feet of commercial at Northlake Mall.

7. AEO Inc. signed a guaranty of the Lease dated February 27, 2003 (the "Guaranty").

8. AEO Retail has made all payments to Spinoso required under the Lease and remains current on the Lease payments.

9. AEO Inc. has complied, and has continuously remained in compliance, with its obligations under the Guaranty.

10. In Section 8.01 of the Lease, Spinoso promised to "operate and maintain [the] Shopping Center in accordance with the standards of first-class shopping

centers." Counterclaimants reasonably relied on Spinoso's material representations in Section 8.01 when they entered into the Lease, its amendments, and the Guaranty.

11. Far from being a "first-class shopping center[]," Northlake Mall has devolved into a practical warzone over the past two-plus years.

12. For example, two people were shot and three arrested at Northlake Mall on August 12, 2021. The suspects were charged with attempted murder and assault with a deadly weapon.

13. Only three days later, on August 15, 2021, another shooting occurred. This shooting forced Northlake Mall to close for the day and made Defendants lose income.

14. Due to the shootings, AEO Retail's employees and customers reasonably did not feel safe in Northlake Mall. This caused Defendants to lose a significant amount of business and income.

15. In August 2021, Northlake Mall implemented a "Youth Supervision Policy."

16. Under the Youth Supervision Policy, "shoppers 17 and under must be accompanied by a parent or adult age 21 or older at all times after 3 pm on Fridays and Saturdays." *See* https://www.shopnorthlake.com/youth-supervision-policy (last accessed September 6, 2023).

17. Teenagers aged 17 and younger comprise a substantial percentage of AEO Retail's customer base.

18. Northlake Mall's Youth Supervision Policy diminished AEO Retail's sales and prevented many customers from attending its Northlake Mall location during key retail times.

19. But the Youth Supervision Policy did not stop the violence. Between December 2022 and March 2023, another three shootings occurred.

20. On December 15, 2022, one was person was shot multiple times outside a jewelry store in Northlake Mall. A bullet hit one of the store's workers. Three suspects were arrested in connection with the shooting, two of whom were aged 19 and 21. The 19-year-old was charged with attempted murder and assault with a deadly weapon, while the other two suspects were charged with assault.

21. On February 5, 2023, another shot was fired inside the mall.

22. And on February 28, 2023, shots were fired during a fight outside of Macy's at the mall.

23. After the February 28 shooting, local network WBTV ran a segment called, "People don't feel safe: violence at Northlake Mall taking toll on nearby businesses." *See* https://www.wbtv.com/2023/03/02/violence-northlake-mall-taking-toll-nearby-businesses/ (last accessed September 6, 2023).

24. The WBTV piece quoted the owner of Northlake Mall tenant Red Crab, who said: "I don't feel safe . . . It used to be busy all the time here, especially at night. People don't feel safe to come out at night now, so it's greatly impacted us."

25. The piece also quoted the owner of a tobacco shop across from Northlake Mall, who said: "You don't see nobody at the mall because of all the crazy stuff that be happening . . . like people don't feel comfortable to come outside sometimes."

26. On March 1, 2023, major retailer Apple abruptly shut its retail store at Northlake Mall. Upon information and belief, this occurred because of safety concerns after the spate of crime at the mall. Apple announced plans to move to a shopping center that has a much lower crime rate and is safe.

27. On March 23, 2023, another major retailer—Buckle—also shuttered its Northlake Mall location. Upon information and belief, Buckle left the Northlake Mall because of safety concerns related to the violence in Northlake Mall.

28. After Apple and Buckle departed Northlake Mall, Spinoso announced new security measures that one might expect at a prison, not at a "first-class" shopping center.

29. Under the new policy Spinoso: "significantly" increased the amount of staff and visibility of off-duty police officer presence patrolling during operational hours; implemented a "K-9 Patrol" and "Firearm Detection Unit"; installed "[l]arge public view monitors" in the mall's entrances and high-traffic areas; upgraded 140 security cameras around the mall; and added "vehicle recognition technology" to cross-reference police database. *See* https://www.wsoctv.com/news/local/more-officers-k-9s-coming-northlake-mall-security-measures-increase/5F4UH3VHDZCBJBM5V7TDKMOD5Q/ (last accessed September 7, 2023).

30. But the draconian security measures did not stop major retailers from leaving Northlake Mall. On August 18, 2023, major fashion retailer Michael Kors shut down its Northlake Mall location. Upon information and belief, Michael Kors—like Apple and Buckle—left Northlake Mall because of safety concerns related to the violence in Northlake Mall.

31. The extreme and unusual level of crime and violence at Northlake Mall makes it a far cry from the "first-class shopping center" that Spinoso promised to maintain in the Lease.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – Frustration of Purpose)

32. Counterclaimants incorporate the allegations in paragraphs 1–31 as if fully set forth herein.

33. An actual controversy exists between Counterclaimants and Plaintiff.

34. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Counterclaimants seek a declaratory judgment that AEO Retail's obligations under the Lease, and AEO, Inc.'s obligations under the Guaranty, are excused due to frustration of purpose.

35. Intervening, unforeseeable events that occurred after the parties signed the Lease and Guaranty destroyed Counterclaimants' expected value in performance of the Lease and Guaranty.

36. Counterclaimants could not reasonably have protected themselves by the terms of the contracts against the contingencies that later arose.

37. These unforeseeable events—all of which occurred because of Spinoso's actions or inactions—include rampant shootings, other crime, and a policy restricting part of AEO Retail's customer base from visiting the Shopping Center at key retail times on Fridays and Saturdays.

38. Counterclaimants thus seek a Declaratory Judgment that the Counterclaimants' obligations under the Lease and the Guaranty are excused due to frustration of purpose.

39. Counterclaimants further seek a Declaratory Judgment that they are entitled to compensatory damages in an amount exceeding $75,000 for payments rendered to Spinoso despite the frustrated purpose of the Lease and Guaranty.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

40. Counterclaimants incorporate the allegations in paragraphs 1–39 as if fully set forth herein.

41. Spinoso has been unjustly enriched by AEO Retail.

42. AEO Retail has conferred a measurable benefit upon Spinoso by paying Spinoso for rent.

43. Spinoso consciously accepted that measurable benefit.

44. The benefit was not conferred officiously or gratuitously.

45. Following Spinoso's enrichment, AEO Retail suffered actual losses due to Spinoso's inability to provide a Shopping Center in accordance with a first-class mall, including its inability to keep Northlake Mall safe for AEO's employees and customers.

46. The amount of harm cause by Spinoso will be proven at trial, but is in excess of $75,000.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract)**

47. Counterclaimants incorporate the allegations in paragraphs 1–46 as if fully set forth herein.

48. Alternatively, AEO Retail and Spinoso entered into a valid, binding, and written contract—the Lease and its amendments.

49. Pursuant to Section 8.01 of the Lease, Spinoso was to "operate and maintain [the] Shopping Center in accordance with the standards of first-class shopping centers."

50. Spinoso breached this term by allowing the Shopping Center to become a known hotbed for violent crime, including multiple shootings over a short time period.

51. AEO Retail has suffered damages because of Spinoso's breach.

52. As a result, Counterclaimants have been damaged in an amount to be proven at trial, but in excess of $75,000.

### FOURTH CLAIM FOR RELIEF
**(UNFAIR AND DECEPTIVE TRADE PRACTICES –
N.C. GEN. STAT. § 75-1.1)**

53. Counterclaimants incorporate the allegations in paragraphs 1–52 as if fully set forth herein.

15

54. Spinoso's actions or inactions have caused rampant shootings, other crime, and a policy restricting part of AEO Retail's customer base from visiting the Shopping Center at important retail times on Fridays and Saturdays.

55. This conduct has directly impacted Counterclaimants' ability to fulfill any obligations under the Lease.

56. Spinoso has not maintained Northlake Mall as a "first-class shopping center."

57. Spinoso has restricted and prohibited part of AEO Retail's customer base from visiting the Shopping Center, interfering with AEO Retail's ability to do business and reducing AEO Inc.'s benefit in providing the Guaranty.

58. These unfair and deceptive trade practices were in and affecting commerce.

59. As a direct and proximate result of Plaintiff's conduct, Counterclaimants have been damaged in an amount to be proven at trial, but in excess of $75,000.

**FIFTH CLAIM FOR RELIEF**
**(TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE BUSINESS RELATIONS)**

60. Counterclaimants incorporate the allegations in paragraphs 1–59 as if fully set forth herein.

61. Spinoso intentionally and willfully instituted a policy restricting part of AEO Retail's customer base from visiting the Shopping Center at key retail times on Fridays and Saturdays.

62. A substantial percentage of AEO Retail's customer base is teenagers 17 and younger.

63. Spinoso instituted this policy knowing that it may, and did, interfere with AEO Retail's prospective customers and revenue generated from AEO Retail's customer base.

64. Spinoso did not have a right or justifiable cause to interfere with these prospective customers who would have entered into a contract with AEO Retail, *i.e.* made a purchase, but for Spinoso's actions.

65. AEO Retail has suffered actual losses because of Spinoso's policy in an amount to be proven at trial, but in excess of $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants request the following relief:

1. That Plaintiff is held responsible for any judgment entered in this action;

2. For a declaratory judgment that AEO Retail's obligations under the Lease, and AEO, Inc.'s obligations under the Guaranty, are excused due to frustration of purpose;

3. For compensatory and punitive damages in an amount to be determined at trial;

4. For pre- and post-judgment interest on all damages as allowed by the law;

5. For attorney's fees and costs as permitted by law;

6. For treble damages as contemplated by N.C. Gen. Stat. § 75-1.1.

7. For such other and further relief as this Court deems just and proper; and,

8. That a trial by jury be had on all issues so triable.

This 12th day of September 2023.

/s/ William R. Terpening
William R. Terpening
N.C. Bar 36418

**TERPENING LAW PLLC**
221 W. 11th Street
Charlotte, NC 28202
terpening@terpeninglaw.com
(980) 265-1700

*Counsel for AE Outfitters Retail Co. and American Eagle Outfitters, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** were served upon all parties to this action through the Court's CM/ECF system and by U.S. Mail to the addresses listed below:

John B. Honeycutt, Jr.<br>
Honeycutt Law Firm, PLLC<br>
P.O. Box 2484<br>
Cornelius, North Carolina 28031<br>
<br>
<em>Attorney for Plaintiff</em>

Submitted, this 12th day of September 2023.

/s/ William R. Terpening
William R. Terpening